[Cite as *Toliver v. Duwel*, 2012-Ohio-846.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY   COUNTY

| | | |
|---|---|---|
| NANCY S. TOLIVER | : | |
| | : | Appellate Case No. 24768 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 09-CV-3189 |
| v. | : | |
| | : | |
| DAVID M. DUWEL, et. al | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 2ⁿᵈ day of March, 2012.

. . . . . . . . . . .

NANCY S. TOLIVER, 614 Kenilworth Avenue, Dayton, Ohio 45405
        Plaintiff-Appellant, *pro se*

JAMES T. AMBROSE, Atty. Reg. #0011151, One First National Plaza, 130 West Second Street, Suite 2101, Dayton, Ohio 45402
        Attorney for Defendants-Appellees

. . . . . . . . . . . .

FAIN, J.

## I.  Introduction

{¶ 1}   Plaintiff-appellant Nancy Toliver appeals, pro se, from a summary judgment rendered in favor of defendants-appellees David Duwel and David M. Duwel & Associates on Tolliver's legal malpractice claim.   Toliver's brief contains eight assignments of error, which allege both procedural and substantive errors in the trial court proceedings.   We conclude that

no error occurred. The magistrate and trial court did not fail to follow local rules or the Ohio Rules of Civil Procedure during the trial court proceedings. The trial court also did not err in rendering summary judgment. Toliver failed to submit evidence raising genuine issues of material fact on her claims. Accordingly, the judgment of the trial court is Affirmed.

## II. Factual Background

{¶ 2} The undisputed facts presented to the trial court are as follows. Plaintiff-appellee Nancy Toliver began working for Montgomery County Jobs and Family Services (MCJFS) in September 1999. Toliver was employed as an Account Clerk II, in the auditing department, auditing payment summaries. In 2000, Toliver joined a union, AFSCME, Local 101. She became a union steward in 2004 or 2005, and ran for chapter chair in 2006, eventually winning the seat in a run-off election.

{¶ 3} In early December 2007, the Union charged Toliver with having violated its International Constitution. In mid-December 2007, Toliver consulted defendant-appellee David Duwel, an attorney who handles various civil matters, including employment, corporate, business, and real estate cases. Toliver wanted legal assistance because she believed the Union had filed false charges against her and was trying to expel and fine her. Duwel had been recommended to Toliver by another attorney.

{¶ 4} Duwel and Toliver signed a Retainer and Fee Agreement on December 26, 2007, pursuant to which Toliver retained Duwel and his firm, David M. Duwel & Associates, to act on her behalf for claims before the "SERB" (State Employee Relations Board) and the "Judicial Panel" (a hearing panel of Local 101). Paragraph 4 of the agreement states that:

> The Firm agrees to pursue Client's claim through appropriate

administrative, legal, or other procedures, to negotiate a settlement of the claim (all settlements subject to Client's approval) or to prosecute the claim to final determination and to do and perform all other acts which, in the judgment of the Firm, are necessary to enforce and protect the rights of the Client. The Firm may exercise its professional judgment as to the manner of seeking relief.

Toliver Deposition Exhibit A, p. 1.

{¶ 5} The agreement required Toliver to pay Duwel a $2,000 retainer for the initial investigation and handling of the claim. Toliver agreed to be billed at $200 per hour, with the hourly amounts to be billed against the retainer. She further agreed to be billed at he end of each calendar month, and to pay an additional $2,000 retainer upon being notified that the initial retainer had been exhausted. Finally, the agreement provided for termination at any time by either party, consistent with the law and the firm's professional responsibility and ethical obligations.

{¶ 6} Toliver had many issues while Duwel represented her. Initially, there were two Union-related issues. One matter involved the Union's attempt to discipline Toliver, which was the subject of a Judicial Panel hearing. The other matter involved charges that Toliver had filed against the Union, being Case No. 07-ULP-12-0670, which Toliver, herself, had filed with SERB in late December 2007. Duwel's role was to provide Toliver with legal advice on her SERB charges against the Union, and to appear in person and represent her in connection with the Judicial Panel hearing. Duwel did not appear for, nor did he attend, every matter Toliver had filed against the Union, because he did not think those matters were going to be productive for her, and he did not want her to be charged additional fees.

{¶ 7} In January 2008, Duwel spent approximately 3.65 hours obtaining information

and investigating the Union's charges against Toliver, and reviewing Toliver's response to SERB on the charges she had filed against the Union. This work resulted in a total of $730 incurred towards the $2,000 retainer.

{¶ 8} The Union charges against Toliver arose from a situation in which Toliver had suspended Greg McKee, who had been nominated as a sergeant-at-arms. McKee had been attending labor management meetings during a period of time that Toliver was on leave from employment, and Toliver did not believe that McKee should be attending the meetings. After returning from leave, Toliver told McKee that he would not be attending the management meeting that was to be held in November 2007. When McKee informed her that he planned to attend anyway, Toliver felt "threatened," and suspended him. Toliver stated in her deposition that she did not know if she had the power to do this, but suspended McKee to prevent him from attending the meeting and to deter him from challenging her authority.

{¶ 9} When Duwel initially met with Toliver, she did not tell him that she had done anything wrong. She alleged that the Union president, Ken Sulfridge, had committed various violations of the international and local constitutions, that the Union had treated her wrongfully, and that the Union was actively harassing her.

{¶ 10} In February 2008, Duwel spent an additional 2.9 hours reviewing his file and preparing for the Judicial Panel hearing with the Union, reviewing documents sent by Toliver, and responding to Toliver's questions. This accounted for another $580 to be charged against the retainer. In addition, Duwel attended the Judicial Panel hearing at the Union hall on February 22, 2008, for which he charged Toliver 1.0 hours, or a cost of $200. At this point, $1,510 of the retainer had been expended.

{¶ 11} Because Duwel had not been able to effect an informal resolution of the

Union charges against Toliver, he and Toliver attended the Judicial Hearing at the Union hall. Before attending the meeting, Duwel had agreed with Toliver that Union subchapter officers did not specifically include a sergeant-at-arms position like the one given to McKee. However, at the hearing, it became apparent to Duwel that the charges against Toliver were not false, because she did not have the right as a subchapter chairperson to expel anyone from the Union. In addition, Duwel learned that McKee had the right to be present at meetings as a sergeant-at-arms.

{¶ 12} During January and February, and at the hearing, Duwel identified the problem Toliver was having with the Union. It did not really have much to do with whether Toliver was guilty of something, but involved problems in communication. Union personnel had not been talking with Toliver, because she and Sulfridge were involved in some sort of feud, where they were sending letters back and forth or yelling at each other.

{¶ 13} At the hearing, Duwel attempted to set up a process where the parties could go forward and stop yelling at each other, and where Toliver would be able to get on with her duties. Duwel was able to convince the Judicial Panel members that if Toliver had made a mistake, she had not done so purposely, and that the Union needed to do a better job of communicating with its chairpersons. Thus, while the Judicial Panel issued a decision on February 26, 2008, concluding that Toliver was guilty of the charges, the panel also observed that Toliver was a new chairperson and felt she had not received adequate training. The panel, therefore, did not fine or expel Toliver. Instead, it held that the prior written notice from Sulfridge, informing Toliver that a chapter chair does not have the power to suspend an elected member, would serve as a formal reprimand to Toliver. Toliver was advised that she could appeal the decision by contacting the Ohio Council 8, in Worthington, Ohio.

**{¶ 14}** Duwel concluded that the decision was a great result, because Toliver had not been suspended, expelled, or fined, which were consequences she originally faced. Instead, she had only received a reprimand. The Union also said it would offer more help in communicating with Toliver. Duwel advised Toliver that appeal would be fruitless, because she had not had the authority to suspend McKee. Nonetheless, Toliver elected to appeal the decision on her own, and a hearing was set on the matter for May 3, 2008. The hearing was then continued until June 7, 2008, because Duwel would not be in town on the original date. Construing the facts most strongly in Toliver's favor, Duwel did initially agree to attend the hearing with Toliver.[1]

**{¶ 15}** In addition to having issues with her Union, Toliver had issues at her place of employment. Toliver was on leave from work between May 18, 2007, and October 2007, receiving temporary total compensation from the Workers' Compensation Fund. Joseph Gibson was Toliver's attorney for the Workers' Compensation claim. When Toliver returned to work, she was placed on transitional duty. She was then returned to regular duty. On February 15, 2008, Toliver's supervisor told her that in order to stay on the job, she had to obtain "restrictions."[2] Eventually, Toliver was placed on a leave of absence on March 18, 2008, because she could not perform her job. The leave of absence was without pay, because Toliver refused to use her sick leave, annual leave, and personal leave in order to get paid.[3]

---

[1] Toliver testified that Duwel agreed to attend. Duwel testified that he probably agreed to attend, but that he could not recall specifically. He stated that he would only have been at the hearing to provide moral support, because Toliver was not going to be successful in the appeal.

[2] Toliver testified to this, but did not explain what was meant by "restrictions."

[3] This is based on Toliver's testimony, not any other evidence that was presented in the record.

Toliver filed a grievance with the Union and also filed a discrimination charge with the Ohio Civil Rights Commission (OCRC), contending that her employer, MCJFS, had unlawfully discriminated against her because of her disability and in retaliation. Duwel was not involved in either filing.

{¶ 16} On March 18, 2008, MCJFS sent Toliver correspondence regarding her group benefits during her leave of absence without pay due to a work-related injury or illness. The letter stated that the Human Resources Department had received notice of Toliver's leave of absence without pay due to a work-related injury or illness, effective March 18, 2008, extended through April 18, 2008. The letter scheduled Toliver to return to work on May 19, 2008, and told her to submit a new medical statement if she planned not to return then. The letter also said that Toliver would be placed on a disability separation, effective April 10, 2008.

{¶ 17} Disability separation, according to the letter, occurs if an employee cannot return to work at the end of twelve months due to a disabling condition. It was defined as a termination with reinstatement rights for up to three years. The letter indicated that Toliver was responsible for contacting her supervisor before the end of her leave of absence regarding whether she would return to work or wished to proceed with her disability separation. In addition, the letter gave Toliver information on applying for disability retirement under the Public Employees Retirement System.

{¶ 18} On April 25, 2008, OCRC called Toliver and said that MCJFS wanted to mediate the discrimination charge. The mediation was set for April 28, 2008. Toliver contacted Duwel's office to ask if he would attend the mediation, and Duwel agreed. Duwel and Toliver met on April 28, 2008, and then attended the mediation for about two hours.

{¶ 19}     On April 28, 2008, Toliver signed an agreement to mediate, which indicated that mediation was voluntary and could be terminated at any time by either party. At the mediation held the same day, Toliver and MCJFS signed a conciliation agreement, in which Toliver released and agreed not to sue MCJFS for any claims arising under R.C. Chapter 4112 that were the subject of the OCRC charge. MCJFS also agreed to let OCRC monitor its compliance with the terms of the agreement and file a complaint seeking enforcement of the agreement. The agreement further provided that Toliver would provide a written request for reinstatement to the position of Account Clerk II, effective May 18, 2008, with no restrictions with a narrative from her treating provider. Toliver also agreed to attempt to make an appointment with her physician, Dr. Mesgali, for her carpal tunnel issue, so that she could take a narrative from her physician to a physical examination at Med Works the week of May 12, 2008.[4]

{¶ 20}     Under the agreement, MCJFS agreed to reinstate Toliver if she were released by her physician's exam with no restrictions, and to provide her with a lateral transfer as an account clerk to another unit. This would have allowed Toliver to leave a supervisor with whom she did not get along, and to have a supervisor of whom she approved. Toliver signed the agreement. Construing the facts most strongly in Toliver's favor, Toliver believed, despite signing the agreement, that it was "tentative."[5]

---

[4] In the case before us, two copies of the signed OCRC agreement were presented. One states that Toliver would "attempt" to make an appointment, and the other says that Toliver "would make" an appointment with her physician, Dr. Mesgali. In Toliver's prior appeal, Toliver presented a version that includes the "attempt" to make an appointment language. We accept that as the established version. See *Toliver v. Montgomery Cty. Jobs & Family Servs.*, 2d Dist. Montgomery No. 22979, 2009-Ohio-3521, ¶ 11 (*Toliver I*). In any event, we do not find the difference in language to be material.

[5] The agreement, which is signed by the parties and their attorneys, as well as the mediator, Vicki Burns, does not indicate that it is

{¶ 21}     The next day, on April 29, 2008, Toliver received a letter on Montgomery County, Ohio letterhead, which was apparently signed by Stephanie Echols, Human Resources Director.  The letter was dated April 23, 2008, and the envelope was post-marked April 28, 2008.  According to the letter, the Board of Commissioners for Montgomery County had approved Toliver's disability separation, effective April 9, 2008.  Like the letter of March 18, 2008, this letter indicates that disability separation is a termination of employment with reinstatement rights for up to three years.  The letter further states that:

> You may be reinstated to a position in the classification you held at the time of separation at any time within your reinstatement period by submitting a written request.  The request must include a medical examination or satisfactory documentation that the disability no longer exists.

{¶ 22}     Toliver called the mediator on April 29, and told her that she did not want the agreement to go forward as a final agreement.  Toliver did not indicate what, if anything, the mediator said in response.  Toliver also called Duwel's office and left a message about the letter she had received.  There is no dispute about the fact that Duwel, Toliver, and Robert Guehl, the prosecuting attorney representing MCJFS, were all unaware of the April 23, 2008 letter and the action of Board of Commissioners at the time the mediation agreement was signed.

{¶ 23}     Duwel met with Toliver in his office on Friday, May 2, 2008.  Believing she had been "terminated," Toliver was upset.  Duwel indicated that the disability separation

"tentative," and Toliver never successfully articulated why she believed it was tentative, other than the fact that she was not "super-comfortable" signing it, and that Duwel had said "let's make it tentative, if we could get into the doctor."    Toliver Deposition, p. 64.

letter was not effective, due to the OCRC agreement. After reviewing the April 23, 2008 letter, Duwel faxed it to Guehl, while Toliver was in Duwel's office. Guehl subsequently agreed with Duwel that the disability separation or termination letter was not effective, because it violated the terms of the OCRC mediation agreement.

{¶ 24} In March and April 2008, Duwel spent an additional 4.3 hours reviewing documents, meeting with Toliver, and attending the mediation, resulting in total further attorney fees of $860. Duwel sent Toliver a bill on April 30, 2008, indicating that she had used all of the $2,000 retainer, and that she owed an additional amount of $370.

{¶ 25} On May 5, 2008, Toliver sent Duwel a letter dated May 3, 2008, expressing dissatisfaction with his services and requesting a return of the $2,000 retainer. Toliver also asked Duwel to eliminate the outstanding additional charges ($370). Duwel did not receive the letter until May 7, 2008.

{¶ 26} On Monday, May 5, 2008, Toliver met with attorney Jason Matthews, an attorney with Silverstein and Associates. Matthews called Duwel on May 7, 2008, and indicated that he was representing Toliver now, that Toliver wanted her file back, and that she was very upset with Duwel because Duwel had "lied" to her about the termination. Duwel did not speak with Toliver again after that time, because she was represented by other counsel, and speaking with her would violate his professional responsibilities. Duwel also took no further action with regard to Toliver's legal matters, because he was no longer representing her.

{¶ 27} On May 13, 2008, Toliver sent Duwel another letter, asking that he return any and all documents in his possession. At the time Duwel received this letter, he was under the impression that Toliver was being represented by Matthews. Duwel called Matthews and

also wrote him a letter, requesting that Matthews ask Toliver not to deal directly with him, and to communicate through Matthews.

{¶ 28}     On May 22, 2008, the OCRC issued a decision ratifying the conciliation agreement.  Toliver was notified that she had the right to obtain judicial review of the decision, and must file a petition for judicial review within thirty days of the mailing of the order.  Duwel received a copy of the decision, but took no action other than placing the document in his file, because he no longer represented Toliver.   Toliver received the order on May 23, 2008, but did not file any documents with the Montgomery County Common Pleas Court until July 9, 2008.  *Toliver I,* 2009-Ohio-3521, at ¶ 17.   The common pleas court dismissed the appeal for lack of jurisdiction, and we affirmed the dismissal in July 2009, because Toliver failed to comply with the jurisdictional requirements in R.C. 4112.06(H).   Id. at ¶ 34.

{¶ 29}     Toliver again wrote to Duwel on May 24, 2008, asking that he refund the $2,000 retainer fee, that he reduce any other fees owed to zero, and that he return the documents in his file.  Duwel received the letter on May 28, 2008.  At the time, the documents Toliver had requested were waiting at the front desk in his office to be picked up by Toliver.  It was Duwel's understanding that Toliver wanted to pick up the documents. And, because Toliver had said the documents had to be returned at his expense, Duwel assumed she meant the copying expense, not that the documents needed to be mailed to her.

{¶ 30}     On June 2, 2008, Duwel sent an e-mail to Matthews, responding to the comments Toliver had made about his services in her May 3, 2008 letter.  The first paragraph of the e-mail reads as follows:

As I understand, you are now representing Ms. Toliver regarding her

Ohio Civil Rights Commission charge and her matters associated with the Union. As we discussed on May 7, 2008, I am, by this letter responding to Ms. Toliver's four-page latter dated May 3, 2008, and received on May 7, 2008. Toliver Exhibit 32, p. 2, identified at Duwel Deposition, also identified during Toliver Deposition as Exhibit E.

{¶ 31} Duwel also indicated in the e-mail that his office had issued a credit to Toliver for the full amount of her outstanding bill with his office. He stated that the hours worked on Toliver's various issues exceeded the amount of the retainer, and that his office had not charged Toliver for all the hours that had been worked. And finally, Duwel told Matthews that Toliver was a very nice lady, but did not trust many people and seemed to focus on negative, rather than positive, matters.

{¶ 32} After receiving Duwel's e-mail, Matthews sent Toliver a letter dated June 6, 2008, and included a copy of Duwel's e-mail. Matthew's letter indicates that Duwel had recently forwarded communications to their office, believing that they (Silverstein and Associates) were currently representing Toliver. Matthews then stated that:

As you and I discussed on June 7, 2008, I do not believe that we can be of assistance in your matter involving the OCRC. I have enclosed the correspondence that I have received from Mr. Duwel. Please contact me if you have any further questions. Id.

{¶ 33} The hearing on Toliver's appeal of the Union reprimand took place on June 7, 2008, which was a Saturday. Neither Duwel nor Matthews attended the hearing. Prior to the hearing date, Duwel's office had called Toliver to let her know that the documents were available for pickup, but Toliver failed to pick them up. After May 5, 2008, Toliver never

asked Duwel to attend any hearings on her behalf, nor did she ask him to furnish her with further legal services.

**{¶ 34}** Toliver attended the hearing on June 7, 2008, which resulted in a decision upholding the reprimand that had been issued. Again, Toliver was neither fined nor expelled, and was told the reprimand would stay in her file for six months.

**{¶ 35}** Toliver had also filed an appeal of her disability separation from the county. On June 27, 2008, SERB disaffirmed the order of involuntary separation, meaning that the April 23, 2008 letter terminating Toliver's employment was no longer operative. As was noted, Toliver challenged the OCRC order adopting the mediation agreement, but her case was ultimately dismissed because she failed to timely file her appeal within a month after the May 22, 2008 mailing of the OCRC order. *Toliver I*, 2009-Ohio-3521, at ¶ 34.

**{¶ 36}** In April 2009, Toliver filed a legal malpractice action against Duwel, alleging that he had negligently represented her and had charged excessive fees. Toliver filed the action pro se. Toliver filed an amended complaint in May 2009, adding Duwel's firm as a defendant.

**{¶ 37}** After receiving extensions of time to name an expert witness, Toliver filed a motion for summary judgment in February 2010; her motion was not supported by the affidavit of an expert witness. Duwel also filed a motion for summary judgment, which was supported by depositions and the affidavit of Duwel, who outlined his qualifications as an attorney, and averred to a reasonable degree of professional, legal probability or certainty, that he did not violate the standard of care owed to Toliver while furnishing legal services to her.

**{¶ 38}** Toliver did not furnish an affidavit from an expert regarding her claims, despite being cautioned on various occasions about the ramifications of failing to provide

admissible and relevant evidence to oppose summary judgment. In May 2010, a magistrate concluded that summary judgment should be rendered in Duwel's favor. Toliver filed objections to the magistrate's decision, and the trial court held a hearing in August 2010, on the objections. In July 2011, the trial overruled the objections, adopted the magistrate's findings of fact as its own, and rendered summary judgment in favor of Duwel and Duwel & Associates.

{¶ 39}     Toliver appeals from the summary judgment rendered against her.

### III.    Did the Magistrate Fail to Follow Procedural Rules?

{¶ 40}     Toliver's First Assignment of Error is as follows:

{¶ 41}     "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF AND ABUSED ITS DISCRETION IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS WHEN THE MAGISTRATE FAILED TO FOLLOW THE RULES GOVERNING HIS APPOINTMENT AND ABUSED ITS DISCRETION AND VIOLATED LOCAL AND CIVIL RULES WHEN HE RECOMMENDED THE MAGISTRATE DECISION TO THE TRIAL COURT FOR ADOPTION."

{¶ 42}     Toliver's argument under this assignment of error is not clear, but what she appears to be contending is that the magistrate erred by failing to hold an evidentiary hearing after the case was referred. Toliver does not cite case law supporting her assertion, and refers only generally to Civ. R. 53 and Loc. R. 2.31 of the Court of Common Pleas of Montgomery County, General Division, both of which govern proceedings before magistrates.

{¶ 43}     Civ. R. 53(C) provides that magistrates have the authority to assist courts of record, and the rule authorizes magistrates "to do any of the following:  (a) Determine any motion in any case; (b) Conduct the trial of any case that will not be tried to a jury; (c) Upon

unanimous written consent of the parties, preside over the trial of any case that will be tried to a jury * * *."

{¶ 44}    In the case before us, the trial court referred the matter to a magistrate in November 2009.  All parties subsequently signed an order consenting to a jury trial to be heard before the magistrate.  In addition, the parties filed cross-motions for summary judgment, which the magistrate resolved in May 2010, by concluding that summary judgment should be rendered in favor of the defendants.

{¶ 45}    Civ. R. 56(C) provides that summary judgment motions "shall be served at least fourteen days before the time fixed for hearing. The adverse party, prior to the day of hearing, may serve and file opposing affidavits."    We have previously noted that:

> The court may in its discretion hold a hearing on the motion to hear oral arguments or objections to evidence proffered.  However, because Civ.R. 56(C) limits the parties' submissions to documentary evidence, evidentiary hearing on the merits of the motion are not available.  The proceedings are instead governed by Civ.R. 7(B)(2), which permits the court to direct the submission and determination of motions "without oral hearing upon brief written statements of reasons in support and opposition."   (Citations omitted.)
>
> *Estate of Murrell Waters v. Promet Service*, *LLC*, 2d Dist. Montgomery No. 20481, 2005-Ohio-2534, ¶ 13.

{¶ 46}    Thus, the magistrate was not required to hold an oral hearing on the motions for summary judgment, but could issue a decision based on the written memoranda and submissions of the parties.  We note that the trial court did hold an oral hearing on Toliver's objections to the magistrate's decision, and the transcript of that hearing has been

filed and considered on appeal.

{¶ 47}     Toliver's First Assignment of Error is overruled.

## IV.   Did the Trial Court Err in Rendering Summary Judgment
## in Defendants' Favor on Toliver's Legal Malpractice Claims?

{¶ 48}     Toliver's Second Assignment of Error is as follows:

{¶ 49}     "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF AND ABUSED ITS DISCRETION AND VIOLATED PROCEDURAL RULES IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS BASED ON MERE CONJECTURE OF THE DEFENDANTS THAT DEFENDANTS [SIC] WAS NOT NEGLIGENT IN REPRESENTING PLAINTIFF PER THE RETAINER AND FEE AGREEMENT AND ORAL AGREEMENT PURSUANT TO THE LEGAL MALPRACTICE STANDARD AS THE MOVING PARTY AND FAILED TO POINT TO ANY RELIABLE PROBATIVE AND SUBSTANTIAL EVIDENCE SUBMITTED BY THE DEFENDANTS PURSUANT TO THE SUMMARY JUDGMENT STANDARD THAT THERE ARE NO GENUINE ISSUES OF MATERIAL FACT FOR THE JURY."

{¶ 50}     Under this assignment of error, Toliver contends that Duwel was negligent in the following ways: (1) in his handling of the case before the OCRC; (2) in failing to take further action regarding the letter of involuntary separation that Toliver showed him on May 2, 2008; and (3) in failing to attend the Union appeal hearing on June 7, 2008.

{¶ 51}     "A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one

conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." (Citation omitted.) *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (1999). "We review summary judgment decisions de novo, which means that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.)

**{¶ 52}** Establishing a cause of action for legal malpractice based on negligent representation requires a plaintiff to show: "(1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." *Vahila v. Hall,* 77 Ohio St.3d 421, 422, 1997-Ohio-259, 674 N.E.2d 1164, syllabus, following *Krahn v. Kinney*, 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989).

**{¶ 53}** "Expert evidence is required to prove an attorney's breach of his duty of care except in cases where the breach is 'so obvious that it may be determined by the court as a matter of law, or is within the ordinary knowledge and experience of laymen.' " *Kreuzer v. Merritt*. 2d Dist. Montgomery No. 18442, 2000 WL 1643794, *2, quoting from *Bloom v. Dieckmann*, 11 Ohio App.3d 202, 464 N.E.2d 187 (1983).

**{¶ 54}** In the case before us, both the magistrate and trial court concluded that issues pertaining to the competence and quality of Duwel's representation and his billing practices required expert testimony, which Toliver failed to provide. Therefore, summary judgment in Duwel's favor on those points was deemed appropriate. The magistrate and trial court also observed that expert testimony might not be required where an attorney fails to

appear for a hearing on a client's behalf and the client suffers adverse consequences. In this regard, however, the magistrate and trial court both held that the attorney-client relationship between Duwel and Toliver was terminated prior to the June 7, 2008 hearing. Duwel, therefore, had no obligation to appear at the hearing, and there were no genuine issues of material fact precluding summary judgment in Duwel's favor on this claim.

{¶ 55} We agree with the trial court on these points. Considering first the issue of when the relationship ended, we note that "[a]n attorney-client relationship exists in the traditional sense when 'an attorney advises others as to their legal rights, a method to be pursued, the forum to be selected, and the practice to be followed for the enforcement of their rights.' " *Collett v. Steigerwald*, 2d Dist. Montgomery No. 22028, 2007-Ohio-6261, ¶ 32, quoting *Landis v. Hunt*, 80 Ohio App.3d 662, 669, 610 N.E.2d 554 (1992). "An attorney-client relationship is essentially a contract to perform services. The contract can be written or oral and express or implied." Id. at ¶ 33.

{¶ 56} Typically, the issue of when an attorney-client relationship ends is relevant to statute of limitations issues. In the case before us, however, the issue is relevant to whether Duwel breached his care of duty by failing to appear at the June 7, 2008 hearing. We conclude that there are no genuine issues of material fact in this regard, because Toliver had terminated the attorney-client relationship well before that date.

{¶ 57} "In determining when the attorney-client relationship is terminated, the court must point to an affirmative act by either the attorney or the client that signals the end of the relationship. For a trial court to take this issue away from a jury, such an act must be clear and unambiguous." (Citation omitted.) *Mobberly v. Hendricks*, 98 Ohio App.3d 839, 843, 649 N.E.2d 1247 (9th Dist.1994).

{¶ 58}    Toliver's affirmative acts in May 2008, clearly and unambiguously signaled the end of the attorney-client relationship.  No reasonable individual would conclude, after reading Toliver's letters demanding the return of her file and the return of her retainer fee, that Toliver intended to continue the attorney-client relationship.  In addition, Toliver consulted another attorney on May 5, 2008, who contacted Duwel a few days later to indicate that he was now representing Toliver on the claims that Duwel had been retained to handle.  And finally, other than asking for her file and retainer fee back, Toliver never contacted Duwel after May 5, 2008, to request that he represent her in connection with any matter.  Accordingly, there are no genuine issues of material fact regarding whether Duwel breached a duty of care to Toliver by failing to appear at the Union hearing on June 7, 2008.  He was not Toliver's attorney at the time, and he had no duty to appear.

{¶ 59}    The trial court was also correct when it concluded that there are no genuine issues of material fact precluding summary judgment for Duwel on claims about the quality of his representation or his billing.  These are not issues where a breach would be obvious, nor are they matters within the common knowledge of layperson.  Because Toliver failed to present any expert testimony to support her claims, summary judgment on Duwel's behalf was proper.  Furthermore, regarding Toliver's contention that the OCRC claim should not have been settled, the Supreme Court of Ohio has recently clarified *Vahila*, 77 Ohio St.3d 421, 1997-Ohio-259, 674 N.E.2d 1164, for purposes of situations where a plaintiff contends that his or her case should not have been settled.  The Supreme Court of Ohio stated in this regard that:

> When a plaintiff premises a legal-malpractice claim on the theory that
> he would have received a better outcome if his attorney had tried the

underlying matter to conclusion rather than settled it, the plaintiff must establish that he would have prevailed in the underlying matter and that the outcome would have been better than the outcome provided by the settlement. *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173 (2008), syllabus.

**{¶ 60}** In addition to failing to provide expert testimony, which is fatal, Toliver did not present evidence indicating that she would have prevailed on her OCRC claim and that the outcome of the case, if tried, would have been better than the settlement. These matters, again, would need to be established by expert testimony, because they are not within the ordinary knowledge of a layperson.

**{¶ 61}** Toliver's Second Assignment of Error is overruled.

### V. Did the Trial Court Err in Allowing Duwel's Expert Testimony?

**{¶ 62}** Toliver's Third Assignment of Error is as follows:

**{¶ 63}** "TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF, VIOLATED PROCEDURAL RULES AND ABUSED ITS DISCRETION IN GRANTING SUMMARY JUDGMENT WHEN IT ALLOWED THE DEFENDANTS TO SUBSTITUTE [SIC] HIMSELF AS THE EXPERT WITNESS WITHOUT LEAVE OF COURT AND ACCEPTED DEFENDANT [SIC] AFFIDAVIT AS A SUBSTITUTE FOR THE NAME [SIC] EXPERT WITNESS AND REPORT."

**{¶ 64}** Toliver's arguments under this assignment of error are, again, confusing, but what she appears to be objecting to is that the trial court let Duwel submit his own affidavit in connection with summary judgment, and did not require Duwel to produce the

expert report of an expert he had disclosed.

{¶ 65} As an initial matter, we note that "an affidavit from the acting attorney is a legally sufficient basis upon which to grant a motion for summary judgment in a legal malpractice action absent any opposing affidavit of a qualified expert witness for the plaintiff." *Hooks v. Ciccolini*, 9th Dist. Summit No. 20745, 2002-Ohio-2322, 2002 WL 1023172, *2, citing *Hoffman v. Davidson*, 31 Ohio St.3d 60, 62, 508 N.E.2d 958 (1987). *Accord Vahdati'bana v. Scott R. Roberts & Associates Co., L.P.A.*, 10th Dist. Franklin No. 07AP-581, 2008-Ohio-1219, ¶ 31 (holding that legal malpractice defendant may testify regarding whether he or she met standard of care and independent expert testimony is not required. Further, defendant's affidavit is sufficient to carry the initial burden under Civil R. 56(C), and the burden shifts to the plaintiff to demonstrate genuine issues of material fact). *See, also*, *Roselle v. Nims*, 10th Dist. Franklin No. 02AP-423, 2003-Ohio-630, ¶ 31.

{¶ 66} Duwel's affidavit is similar to the affidavits in the cited cases, and was sufficient to satisfy his burden under Civ. R. 56(C). In addition, the depositions contain evidence, construed most favorably to Toliver, that indicate there are no genuine issues of material fact and support the trial court's decision to render summary judgment in Duwel's favor.

{¶ 67} Toliver's second complaint is that Duwel identified an expert witness, but did not provide her with a report, in violation of Civ. R. 26. She also contends that Duwel violated Civ. R. 16 by failing to request leave of court to "substitute" himself as the expert witness.

{¶ 68} Duwel identified Matthew Stokley as his expert witness in October 2009, in compliance with the trial court's discovery order. Duwel then filed his own affidavit

regarding the standard of care when he submitted his motion for summary judgment. As we have noted, this was appropriate. Duwel was not required to submit an affidavit from an independent expert at the summary judgment stage, nor was he precluded from using Stokley as an expert at trial, simply because he did not provide an affidavit from Stokley for summary judgment purposes.

{¶ 69} Civ. R. 26(B)(4) requires parties to provide the names of witnesses and the subjects on which the witness will testify. It does not require a party to provide a report for the other side. If Toliver wished to depose Stokley to discover his opinions, she could have done so, upon making proper arrangements.

{¶ 70} It is clear that many of Toliver's arguments are based on her failure, as a lay person, to understand legal procedure. However, this cannot affect the result in her case, because pro se litigants are held to the same standards as other litigants. *Toliver*, 2009-Ohio-3521, ¶ 39.

{¶ 71} Toliver's Third Assignment of Error is overruled

## VI. Did the Trial Court Err in Failing to Sanction the Defendants?

{¶ 72} Toliver's Fourth Assignment of Error is as follows:

{¶73} "TRIAL COURT ERRED AND COMMITTED PROCEDURAL, PREJUDICIAL AND SUBSTANTIVE RIGHTS VIOLATION WHEN IT ADMITTED THAT IT COULD NOT FORCE DEFENDANTS [SIC] EXPERT WITNESS TO PRODUCE THE REPORT AS REQUIRED BY LAW. THE COURT [SIC] FAILURE IS IN VIOLATION OF CIVIL RULE 26 WHEN IT FAILED TO USE ITS DISCRETION PURSUANT TO CIVIL RULE 37, 55, 11 AND OTHER APPLICABLE RULES OF CIVIL

PROCEDURE TO SANCTION AND COMPEL THE EXPERT REPORT."

{¶ 74}     Under this assignment of error, Toliver makes the same arguments she made in support of her Third Assignment of Error.   Again, Toliver argues that the trial court erred in relying on Duwel's affidavit, and in failing to sanction Duwel when he did not produce a report from his expert witness.   We reject these arguments for the reasons previously stated.

{¶ 75}     Toliver's Fourth Assignment of Error is overruled.

**VII.   Did the Trial Court Issue Inconsistent Rulings?**

{¶ 76}     Toliver's Fifth Assignment of Error is as follows:

{¶ 77}     "TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF AND ABUSED ITS DISCRETION AND SHOW [SIC] PREFERENTIAL TREATMENT IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS BECAUSE PLAINTIFF FAILED TO PRODUCE AN EXPERT WITNESS REGARDING THE FEE BILL DATED APRIL 30, 2008 WHICH CONTRADICT [SIC] THE COURT [SIC] PREVIOUS ORDER OVERRULING DEFENDANT [SIC] MOTION TO DISMISS PLAINTIFF [SIC] COMPLAINT FOR PLAINTIFF [SIC] FAILURE TO PRODUCE AND [SIC] EXPERT WITNESS BUT ALLOWED DEFENDANTS TO SUBMIT HIS [SIC] OWN AFFIDAVIT WITHOUT LEAVE OF THE COURT TO SUPPORT DEFENDANTS MOTION FOR SUMMARY JUDGMENT THAT IS BASED ON EVIDENCE AND NOT MERE EXPERT ENDORSEMENT."

{¶ 78}     Although Toliver's arguments are not well-articulated, what she appears to be saying is that the trial court issued inconsistent rulings by first holding in ruling on a

motion to dismiss that Toliver did not need expert testimony, and then holding in connection with summary judgment, that Toliver did need to provide expert testimony. Toliver also appears to contend that expert testimony on the issue of fees is not required, because it is obvious that the fees were excessive.

{¶ 79} In October 2009, Duwel filed a motion to dismiss, which was based on Toliver's failure to disclose an expert witness in compliance with the court's scheduling order. The magistrate overruled the motion to dismiss in a pretrial order filed in April 2010. The court observed that expert testimony is ordinarily required to establish claims of legal malpractice, except where the attorney's breach of duty is obvious enough to be determined as a matter of law, or lies within the ordinary knowledge of a layman. Because it was "possible" by law to maintain a legal malpractice action without an expert witness, the magistrate overruled the motion to dismiss. The magistrate cautioned Toliver, as it had in its prior scheduling order, that a fact pattern allowing recovery without an expert would be rare.

{¶ 80} The ruling on the motion to dismiss was a preliminary decision, in which the magistrate did not consider the specific facts of the case, but simply observed that as a matter of law, it is "possible" to maintain a legal malpractice action without using an expert witness. This is a correct statement, and the magistrate's analysis complies with standards for ruling on motions to dismiss, which typically involve questions of law. *See*, *e.g.*, *O'Brien v. University Community Tenants Union, Inc.,* 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

{¶ 81} Subsequently, the magistrate and trial court considered summary judgment, which is based on the specific facts of a case. In this situation:

[A] party seeking summary judgment, on the ground that the nonmoving party

cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. * * * [I]f the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264.

{¶ 82}     In the case before us, Duwel met his burden by pointing to evidence, including his own affidavit, that indicated the absence of genuine issues of material fact on the legal malpractice claims.   Toliver then had a reciprocal burden to set forth facts that would establish an issue of fact for trial.   In order to do so, Toliver needed expert evidence, because the alleged malpractice, including the fee issue, was not sufficiently obvious to be determined as a matter of law, nor was it within the ordinary knowledge of a layperson.   Toliver failed to provide expert evidence.   Therefore, the trial court did not err in rendering summary judgment in Duwel's favor.

{¶ 83}     Toliver's Fifth Assignment of Error is overruled.

### VIII.   Did the Trial Court Err in Failing to Consider Toliver's Cross-Motion for Summary Judgment?

{¶ 84}     Toliver's Sixth Assignment of Error is as follows:

{¶ 85}     "THE  TRIAL  COURT  ERRED  TO  THE  PREJUDICE  OF  THE

PLAINTIFF AND ABUSED ITS DISCRETION IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS AND FAILED TO CONSIDER APPELLANTS [SIC] MOTION FOR SUMMARY JUDGMENT FILED ON FEBRUARY 12, 2010 FILED PURSUANT TO CIVIL RULE 56 AND DEFENDANT [SIC] MOTION FOR SUMMARY JUDGMENT FILED ON FEBRUARY 16, 2010 SEPARATELY BEFORE DISMISSING PLAINTIFF [SIC] COMPLAINT WITH JURY DEMAND."

{¶ 86}     Toliver's argument under this assignment of error is convoluted.  She appears to be contending that the trial court erred by failing to consider her cross-motion for summary judgment separately from Duwel's motion for summary judgment.  We see no evidence that this occurred.  The magistrate specifically noted in his decision that cross-motions for summary judgment were pending.  In the decision, the magistrate also discussed Toliver's summary judgment motion and its allegations in detail.  See Doc. #82, pp. 5-9, and 17-21.  After reviewing all the evidence and claims, the magistrate concluded that there were no genuine issues of material fact, that Duwel's motion for summary judgment should be granted, and that Toliver's complaint against Duwel should be dismissed with prejudice.  This disposed of all pending matters, and was appropriately handled by the magistrate.

{¶ 87}  Subsequently, the trial court ruled on Toliver's objections to the magistrate's report.  In its decision, the trial court noted that both sides had filed cross-motions for summary judgment.  Doc. #100, p. 6.  The trial court thoroughly considered all of Toliver's objections and  overruled them.  The court then sustained Duwel's motion for summary judgment and rendered judgment in favor of Duwel and Duwel & Associates and against Toliver.  Thus, both the magistrate and trial court properly considered Toliver's motion for

summary judgment.

{¶ 88}     Toliver cites *LaSalle Bank Natl. Assn. v. Scolaro*, 9th Dist. Summit No. 25084, 2011-Ohio-1218, for the proposition that this case should be remanded.   In that case, which was a foreclosure action, the court of appeals did remand the case so that the trial court could make substantive determinations on cross-motions for summary judgment.   Id. at ¶ 18. However, this was because the trial court had incorrectly stated in its judgment entry that the defendant had failed to respond to the bank's motion for summary judgment.   In fact, the defendant had filed both a response and a cross-motion for summary judgment.   After filing the judgment entry, the trial court incorrectly attempted to correct the error by treating it as a clerical error under Civ. R. 60(A).   The court of appeals concluded that the error was substantive, not clerical, and that the trial court should consider the defendant's response and cross-motion for summary judgment on remand.   Id. at ¶ 17-18.

{¶ 89}     Had a similar error occurred in the case before us, we would reverse the summary judgment and remand the case to the trial court.   However, no error occurred in the court's consideration of the cross-motions for summary judgment.

{¶ 90}     Toliver's Sixth Assignment of Error is overruled.


### IX. Was the Legal Malpractice Obvious to a Layperson?

{¶ 91}     Toliver's Seventh Assignment of Error is as follows:

{¶ 92}     "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF AND ABUSED ITS DISCRETION IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS AND FAILED TO CONSIDER PLAINTIFF [SIC] EVIDENCE THAT SUPPORTS THE CASE IN A CASE DOCTRINE THAT DEFENDANT

PROXIMATELY CAUSED PLAINTIFF DAMAGES IN HANDLING BOTH THE UNION AND EMPLOYER ISSUES BY ORAL AND WRITTEN CONTRACT."

{¶ 93}     Under this assignment of error, Toliver contends that the alleged legal malpractice involved in her cases before SERB and the Union was obvious enough to have been within the knowledge of any layperson.   We disagree, for the reasons stated in connection with our decision on the merits of Toliver's Second Assignment of Error.   The Seventh Assignment of Error, being a rehash of arguments previously rejected, is without merit, and is overruled.

## X.   Did the Magistrate Violate Civ. R. 53(D)(7)?

{¶ 94}     Toliver's Eighth Assignment of Error is as follows:

{¶ 95}     "THE TRIAL COURT CONTINUED THE ABUSE OF DISCRETION AND ADOPTED THE MAGISTRATE [SIC] DECISION AND VIOLATED RULES OF CASE MANAGEMENT AND FAILED TO JOURNALIZE ON THE DOCKET THE COURTROOM PROCEEDINGS ON WHICH THE TRIAL COURT BASED ITS DECISION FILED ON JULY 15, 2011."

{¶ 96}     Under this assignment of error, Toliver appears to be contending that the magistrate erred by failing to hold courtroom proceedings on the motions for summary judgment and by failing to record them.   Toliver also complains about the fact that the trial court waited more than ten months after its own oral hearing to render a decision on the objections to the magistrate's decision.

{¶ 97}     In support of her argument, Toliver relies on Civ. R. 53(D)(7), which states as follows:

Recording of proceedings before a magistrate. Except as otherwise provided by law, all proceedings before a magistrate shall be recorded in accordance with procedures established by the court.[6]

{¶ 98} We noted in our discussion of the First Assignment of Error that oral hearings are not required on motions for summary judgment, and the magistrate was not required to hold an oral hearing. The trial court did hold an oral hearing on Toliver's objections, and that transcript is before us. It adds nothing pertinent to the record.

{¶ 99} Regarding the delay in ruling on the objections, Toliver points to no prejudice that occurred. In addition, Toliver had an available remedy. She could have filed a writ of procedendo, which remedies a "court's refusal or failure to timely dispose of a pending action." *State ex rel. Levin v. Sheffield Lake*, 70 Ohio St.3d 104, 110, 1994-Ohio-385, 637 N.E.2d 319.

{¶ 100} Toliver's Eighth Assignment of Error is overruled.


## XI. Conclusion

{¶ 101} All of Toliver's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

---

[6] Toliver refers to Civ. R. 53(C)(7) in her brief, but no such number exists in subsection (C). We assume that Toliver is referring to Civ. R. 53(D)(7).

Copies mailed to:

Nancy S. Toliver
James T. Ambrose
Hon. Frances E. McGee