[Cite as *Wayside Body Shop, Inc. v. Slaton*, 2013-Ohio-511.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| WAYSIDE BODY SHOP, INC. | : | |
| | : | Appellate Case No. 25219 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 10-CV-1120 |
| v. | : | |
| | : | |
| CURTIS F. SLATON, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellees | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 15th day of February, 2013.

. . . . . . . . . . .

JOHN J. MUELLER, Atty. Reg. #0012101, John J. Mueller, LLC, 632 Vine Street, Suite 800, Cincinnati, Ohio 45202-2441
    Attorney for Plaintiff-Appellant, Wayside Body Shop, Inc.

DAVID K. FRANK, Atty. Reg. #0022925, ROBERT H. STOFFERS, Atty. Reg. #0024419, and JASON R. DESCHLER, Atty. Reg. #0080584, Mazanec, Raskin & Ryder Co., L.P.A., 175 South Third Street, Suite 1000, Columbus, Ohio 43215
    Attorneys for Defendant-Appellees Curtis F. Slaton and Bogin, Patterson, Ellis, Slaton & Stump LLP

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Wayside Body Shop, Inc. ("Wayside") appeals from the trial court's entry of summary judgment against it on its legal-malpractice complaint against Curtis Slaton and the

law firm of Bogin, Patterson, Ellis, Slaton & Stump ("Bogin Patterson").

{¶ 2} Wayside advances two assignments of error on appeal. First, it contends the trial court erred in giving an interlocutory federal district court ruling issue-preclusive effect and entering summary judgment on that basis. Second, Wayside asserts that the trial court erred in construing its complaint too narrowly when finding that the alleged malpractice at issue did not proximately cause any damages.

{¶ 3} The record reflects that a former Wayside employee, Howard Maybury, sued Wayside in Montgomery County Common Pleas Court in 2006, alleging assorted violations of the federal Employee Polygraph Protection Act ("EPPA"), wrongful termination, and intentional infliction of emotional distress. Maybury's claims stemmed from an investigation into a workplace paint "over-spraying" incident that ultimately led to his termination. As part of the investigation, Wayside's attorney, Slaton, met with Maybury and other employees who were suspected of being involved. Among other things, Maybury alleged in his 2006 lawsuit that Slaton had asked him to take a polygraph test and had provided him with a written policy providing for disciplinary action, including termination, for refusing to take the test. During a second meeting, Slaton allegedly provided Maybury with a new written policy that did not mention polygraph tests.[1] In the course of this meeting, Slaton purported to fire Maybury for refusing to sign an acknowledgment form. Wayside's president, Mark Campbell, later fired Maybury, allegedly for acting belligerently during the second meeting with Slaton.

{¶ 4} Wayside removed Maybury's 2006 lawsuit from common pleas court to federal district court based on the presence of the EPPA claim. It then filed a third-party complaint against Slaton and his law firm, Bogin Patterson, alleging legal malpractice.

---

[1] Between the two meetings, Slaton discovered that requiring polygraph tests could violate federal law.

Maybury filed an amended complaint, asserting against Slaton and Bogin Patterson the same claims he had asserted against Wayside.

{¶ 5}   Following removal to federal court, Wayside reached a settlement with Maybury. As a result, Maybury dismissed, with prejudice, his claims against Wayside. At that time, Wayside also dismissed, without prejudice, its third-party complaint against Slaton and Bogin Patterson. Thereafter, Slaton and Bogin Patterson sought summary judgment on Maybury's claims against them. The federal district court sustained the motion in part and denied it in part. Specifically, the motion was sustained with regard to (1) Maybury's claim for intentional infliction of emotional distress and (2) some of his claims alleging violations of the EPPA, including an allegation of wrongful termination in violation of the act. The federal district court denied summary judgment, however, with regard to Maybury's claim that Slaton had violated the EPPA by (1) requesting that he take a polygraph test and (2)  threatening to discharge or discipline him if he refused to take the test. (Doc. #41, Exh. A, p. 4). After the federal district court denied reconsideration, Slaton and Bogin Patterson settled with Maybury, who dismissed his claims against them with prejudice.

{¶ 6}   Wayside subsequently commenced the present action against Slaton and Bogin Patterson in Montgomery County Common Pleas Court. Wayside essentially asserted the same claims it had pursued in federal district court before dismissing them without prejudice. It set forth causes of action for contribution or indemnification, legal malpractice, negligent breach of fiduciary duty, and intentional breach of fiduciary duty. Slaton and Bogin Patterson moved for summary judgment, arguing that all of Wayside's claims "sound in legal malpractice regardless of [its] attempt to label [its] causes of action as something other than

legal malpractice[.]" The basis for the motion was Wayside's inability to establish any damages proximately caused by Slaton's alleged malpractice. Slaton and Bogin Patterson argued:

> * * * Although Mr. Slaton and Bogin Patterson deny Wayside's legal malpractice claims[,] assuming, *arguendo*, that Wayside is able to support the allegations that relate to duty and breach, Wayside cannot establish element (3) of *Vahila*, specifically, that it has suffered actual damages as a result of Mr. Slaton's and Bogin Patterson's conduct. Therefore, Mr. Slaton and Bogin Patterson assert they are entitled to summary judgment.

(Doc. #41 at 7).

{¶ 7} In connection with the foregoing argument, Slaton and Bogin Patterson maintained that the doctrine of issue preclusion barred Wayside from establishing any damages. In support, they relied on findings by the federal district court in its ruling. Wayside responded by moving for leave to file, instanter, a 79-page memorandum in opposition to summary judgment. A copy of the memorandum was attached to the motion for leave. The trial court never explicitly ruled on the motion for leave, although it is apparent that the trial court reviewed and considered the attached memorandum in opposition. Additionally, Slaton and Bogin Patterson filed a reply memorandum addressing Wayside's memorandum in opposition. Therein, Slaton and Bogin Patterson noted Wayside's failure to oppose summary judgment with an expert's affidavit. They argued, among other things, that "[w]ithout expert testimony, Wayside is unable to establish that Mr. Slaton breached a duty of care and caused damages to Wayside[.]"

{¶ 8} On April 30, 2012, the trial court filed a "Decision, Opinion, and Entry of Summary Judgment of Dismissal." (Doc. #91). The trial court described the dispute before it as follows:

> Plaintiff Wayside Body Shop, Inc. alleges in its complaint that as a result of Slaton's legal malpractice, it terminated its employee, Howard Maybury, resulting in a federal lawsuit against it by Maybury, which it was obligated to defend and ultimately settle. In this case, Wayside seeks to recover from Slaton and the firm the moneys it expended to defend and settle the federal case, together with compensatory and punitive damages, and attorney fees.

> The gravamen of Wayside's claim against Slaton and the firm—which can only be liable if Slaton is liable—is that Slaton misapprehended what Wayside was entitled to do in investigating employee misconduct and took it upon himself to "terminate" Maybury as a Wayside employee when Maybury refused to sign, at Slaton's insistence, an acknowledgment that he had received a Wayside policy concerning investigations. Mark Campbell, Wayside's president, subsequently officially terminated Maybury, acting on Slaton's advice.

(Doc. #91 at 1).

{¶ 9} After outlining the federal district court's proceedings, the trial court continued as follows:

> Slaton and the firm contend in their motion for summary judgment that even if they concede for purposes of argument that Slaton's representation of

Wayside fell below the standard of care expected of counsel, Wayside cannot establish that Slaton's representation was the proximate cause of damage to Wayside, citing *Vahila v. Hall*, 77 Ohio St.3d 421, 427 (1997).

The basis for this contention is that the district court granted summary judgment to Slaton and the firm on the question of whether Maybury had been terminated in violation of the EPPA. In other words, the claim of legal malpractice is based on the assertion that Maybury was terminated in violation of the EPPA because of Slaton's deficient knowledge of the EPPA and attendant faulty advice to Wayside, which resulted in Maybury's termination. The cause of action for legal malpractice must therefore fail because the district court determined that Slaton (and inferentially Wayside) did not violate the EPPA in terminating Maybury, and thus Wayside's damages incurred in defending against and settling Maybury's complaint cannot have been proximately caused by Slaton's alleged malpractice.

This argument is supported by the expert testimony of Attorney-at-Law Stephen E. Chappelear and has not been controverted by Wayside. Chappelear's affidavit is confined to the causation element of legal malpractice.

The timeline is instructive. Wayside settled with Maybury in February 2009, approximately six months before the district court determined that Maybury's termination did not violate the EPPA and that Slaton was not liable for intentional infliction of emotional distress. The evidence and information

before this court [do] not disclose the particulars about the settlement, only that it occurred. Maybury's complaint against Wayside was for termination in violation of the EPPA and for intentional infliction of emotional distress. Because the district court granted summary judgment to Slaton and the firm on these claims, it cannot be said that Wayside's damages—settlement money and attorney fees—were proximately caused by Slaton's alleged legal malpractice. See *Green v. Bailey*, 2008 WL 2779192 (Ohio App. 1 Dist.), 2008-Ohio-3569, Para. 17.

This conclusion is consistent with Mark Campbell's deposition testimony that Slaton lacked the authority to terminate Maybury and that he, Campbell, terminated Maybury due to his belligerence with Slaton when Slaton asked him to sign the acknowledgment that he had received the company policy on investigations—a reason for termination that was unrelated to Slaton's alleged malpractice.

(*Id.* at 2-3).

{¶ 10} The trial court then turned again to the federal district court's proceedings, finding that they had issue-preclusive effect. After noting Wayside's admission that it had an attorney-client relationship with Slaton, the trial court found Slaton and Bogin Patterson entitled to summary judgment, reasoning:

While the district court did not specifically address whether Slaton had committed malpractice, it determined that Slaton did not "terminate" Maybury in violation of the EPPA, which was Slaton's alleged malpractice. Hence,

assuming Slaton committed malpractice, it was not the proximate cause of the damages Wayside claims.

(*Id*. at 3).

{¶ 11}   In its first assignment of error, Wayside contends the trial court erred in giving the federal district court's ruling issue-preclusive effect and entering summary judgment on that basis. Specifically, Wayside challenges the trial court's reliance on the federal district court's finding that Slaton did not terminate Maybury in violation of the EPPA. Wayside reasons that the finding, which was contained in an interlocutory, partial summary judgment ruling, never became final and had no preclusive effect in light of the subsequent settlement and voluntary dismissal of the federal action.

{¶ 12}   In response, Slaton and Bogin Patterson argue (1) that Wayside waived all of its appellate arguments because its 79-page memorandum in opposition to summary judgment was never properly filed below, (2) that Wayside waived its "interlocutory" argument by not raising it in opposition to summary judgment, and (3) that the federal district court's ruling was entitled to issue-preclusive effect because there was a final judgment in federal court.

{¶ 13}   Upon review, we are unpersuaded by the arguments of Slaton and Bogin Patterson. Wayside did not waive its argument about the federal district court's ruling lacking issue-preclusive effect. Wayside had timely moved for an additional extension of time to file its lengthy memorandum in opposition to summary judgment. When that was not specifically ruled upon, on the proposed extension date Wayside filed its motion for leave to file its memorandum instanter and included a copy of the memorandum. Although the trial court never expressly ruled on that motion either, the trial court specifically referenced page

forty-two of the memorandum in its ruling and addressed Wayside's arguments. In so doing, the trial court implicitly granted leave for filing. Furthermore, although Wayside did not use the word "interlocutory" in its memorandum opposing summary judgment, it did argue against application of collateral estoppel. Because we believe the trial court's review of Wayside's memorandum in opposition, and reference to it, constituted an implicit grant of leave for filing, we too have considered the content and find that Wayside did not waive all of its appellate arguments.

{¶ 14}  As for the proposition that the federal district court's interlocutory, partial summary-judgment ruling later became "final," we disagree. In support, Slaton and Bogin Patterson cite a "Stipulation of Dismissal with Prejudice" filed in the federal district court action. (Doc. #41 at Exh. J). They argue that this notice of dismissal pursuant to Fed.R.Civ.P. 41(a)(1)(A)(ii), which was signed by counsel but not by the federal district court judge, constituted a "final judgment" into which the interlocutory, partial summary judgment merged. This argument lacks merit. A partial summary judgment followed by a settlement and a dismissal with prejudice has no preclusive effect. *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶46 ("The summary judgment in the prior Ohio action never became a final order because the entire action was nullified with the settlement and dismissal. The doctrine of collateral estoppel cannot be invoked when there is no final order.").

{¶ 15}  Despite the foregoing conclusions, we find no reversible error flowing from the trial court giving preclusive effect to the finding that Maybury was not terminated in violation of the EPPA. The error was harmless for at least two reasons. First, the error was

harmless because the trial court itself found, based on evidence before it, that Slaton did not terminate Maybury in violation of the EPPA. As set forth above, the trial court relied on "Mark Campbell's deposition testimony that Slaton lacked the authority to terminate Maybury and that he, Campbell, terminated Maybury due to his belligerence with Slaton[,] * * * a reason for termination that was unrelated to Slaton's alleged malpractice." (Doc. #91 at 3). Moreover, "[w]e review summary judgment decisions de novo, which means that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶16 (2d Dist.). Based on the record before us, we agree with the trial court's conclusion that Maybury was not terminated by Slaton in violation of the EPPA. Accordingly, the trial court's error of giving preclusive effect to the federal litigation does not result in reversal. [2]

{¶ 16} The trial court's reliance on collateral estoppel was harmless for a second, more fundamental reason as well. In finding that Slaton did not terminate Maybury in violation of the EPPA, the federal district court resolved a question of law. A review of the federal district court's ruling reveals that Maybury's EPPA claim was multi-faceted. The claim was based on allegations that Wayside, Slaton, and the law firm had violated the statute by (1) asking Maybury to take a polygraph test, (2) threatening Maybury with discipline or discharge if he refused to take a polygraph, (3) *terminating Maybury's employment for attempting to exercise his right to obtain and consult with counsel before signing documents*

---

[2] We distinguish the conclusion that summary judgment should be granted on the issue that Maybury was not terminated by Slaton in violation of the EPPA from Wayside's argument, raised in it second assignment of error, that there are damages that it seeks other than the settlement with Maybury and the attorney fees for defending the Maybury lawsuit. We deal with that contention in analyzing the second assignment of error.

*relating to a polygraph*, (4) failing to post certain notices, and (5) failing to provide Maybury with certain notices. (Doc. #41, Exh. A, p.3).

{¶ 17} The federal district court found Slaton and Bogin Patterson entitled to summary judgment on Maybury's claim of termination in violation of the EPPA for attempting to exercise his right to obtain and consult with counsel before signing polygraph-related documents.[3] (Doc. #41, Exh. B, p. 10). The federal district court noted that the EPPA prohibited an employer from firing an employee for exercising "any right afforded by this Chapter." It then found that consulting counsel *was not* a right protected by the EPPA. The federal district court observed that an employer's failure to give an employee an opportunity to consult counsel prevented the employer from invoking certain statutory exemptions to liability but "did not create a separate right, the violation of which will permit the one whose right was violated to sue the violator for damages proximately caused thereby." (*Id*. at p. 11). "More to the point," the federal district court concluded, "[the EPPA] provision does not afford the Plaintiff the right to consult counsel." (*Id*.).

---

[3]We note that Wayside already had settled Maybury's claims against it before the federal district court's partial summary judgment ruling.

{¶ 18} Because Maybury's only claim alleging termination in violation of the EPPA fails, as a matter of law, for a purely legal reason, the trial court's invocation of collateral estoppel was unnecessary and indisputably harmless.[4] This court also reviews questions of law de novo. Whether the EPPA provision at issue in the federal lawsuit provided employees with a right to consult counsel is a question of law. Having reviewed the EPPA and the federal district court's ruling, we believe it answered that question correctly. *See* 29 U.S.C. 2002(4)(C) and 29 U.S.C. 2007(b)(2). Therefore, without regard to any reliance on collateral estoppel by the trial court below, the fact remains that Maybury was not terminated in violation of the EPPA, as alleged in the federal lawsuit, because legally the EPPA does not protect the right he claimed to have been fired for exercising, and factually Slaton did not fire him. We reach this result based on the record before us and not because of any preclusive effect of the federal litigation. That being so, we see no reversible error in the trial court's reliance on issue preclusion. Wayside's first assignment of error is overruled.

{¶ 19} In its second assignment of error, Wayside asserts that the trial court erred in construing its complaint too narrowly when finding that Slaton's alleged malpractice did not proximately cause any damages.

{¶ 20} In its ruling, the trial court reasoned:

> While the district court did not specifically address whether Slaton had committed malpractice, it determined that Slaton did not "terminate" Maybury in violation of the EPPA, which was Slaton's alleged malpractice. Hence, assuming Slaton committed malpractice, it was not the proximate cause of the

---

[4] As noted, Maybury also alleged violations of the EPPA based on being asked to take a polygraph and being threatened with discipline if he refused. We will also address those issues under the second assignment of error.

damages Wayside claims.

(Doc. #91 at 3).

{¶ 21} On appeal, Wayside argues that its complaint below included breach-of-fiduciary-duty and negligence claims that were not predicated on Maybury being terminated in violation of the EPPA. Wayside also maintains that its legal-malpractice claim encompassed more than Slaton terminating Maybury in violation of the EPPA. Therefore, Wayside challenges the trial court's conclusion that it cannot have any damages proximately caused by Slaton's negligence merely because Maybury was not terminated in violation of the EPPA.

{¶ 22} In support of their summary judgment motion, Slaton and the law firm presented the affidavit of Stephen Chappelear, a practicing lawyer and member of the Ohio Bar for over thirty-three years. The affidavit stated that it was based on Chappelear's "review of the pleadings, filings, and discovery in this case , and certain pleadings and filings in the United States District Court * * *, as well as [his] own knowledge and expertise." (Chappelear affidavit ¶1). Chappelear concluded: "It is my opinion, based upon my knowledge, experience, and expertise detailed above and review of the material provided to me, there is no causal connection between the conduct of Mr. Slaton and the damages claimed by Wayside." (*Id.* at ¶13). Indeed, the focus of the motion for summary judgment was whether Wayside could demonstrate that the damages it claimed were proximately caused by Slaton's actions.

{¶ 23} Wayside's argument for this assignment of error begins at page fourteen and ends at page twenty-five of its brief. But pages fourteen through twenty-two deal with the preclusive effect of the federal summary judgment, not proximate causation of damages. Pages twenty through twenty-two also deal with an argument about whether Wayside's damages

(specifically the Maybury settlement and its attorney fees and costs for litigation defense) are speculative, not about proximate causation of those or any other damages.

{¶ 24} Beginning on the last line of page twenty-two and ending on page twenty-five is the only discussion of the critical issue—proximate cause of damages. There, Wayside presents three arguments: (1) "The relationship between the events, Slaton telling Maybury that Maybury's employment with Wayside was terminated * * * and Maybury filing the federal action, resulting in Wayside incurring lawyers' fees, litigation-related costs and expenses, and the settlement * * * satisfies the cause-and-effect relationship underlying proximate causation," (Appellant's brief at 23); (2) Chappelear's affidavit was inadequate because it was based on the assumption that the federal litigation had preclusive effect; and (3) there exists a reasonable connection between Slaton's actions and the "other damages" Wayside seeks to recover. (The only "other damages" referred to in this part of the argument is that Slaton charged Wayside for the negligent preparation of the personnel policy containing the polygraph requirement and also charged for his services to draft a revised policy.)

{¶ 25} We first note that the second and third arguments detailed above were not raised in the trial court below, and we need not consider them. In Wayside's seventy-nine page memorandum in opposition considered by the trial court, there is not a single word referring to Chappelear's affidavit, and there is no response to it. There is repetition of the concept that a lawyer is liable for damages proximately caused by a wrongful act, but there is no specific explanation how the damages in this case were proximately caused by Slaton. Likewise, Wayside below did not allege, pray for, state in interrogatories, explain in deposition, or identify in the record the "other damages" its raises. Not only does the complaint never identify a specific billing-damages amount, it does not even refer to what Slaton "billed" or

"charged" or what Wayside "paid" to Slaton or his firm. The prayer of the complaint seeks the amount of the Maybury settlement, litigation defense costs and fees, fees for the malpractice case, punitive damages, and an amount of amorphous compensatory damages. The prayer makes no request for damages for billing related to the negligently performed work or double billing to correct the error. In Wayside's answer to interrogatories, wherein the defense asked it to "itemize each damage being sought * * * including the dollar amount * * *," there is no mention of billing for negligently performed work, double billing to correct the error, or an amount allocated to either. The deposition testimony of Wayside's president, Mark Campbell, failed to shed any light on these damages claimed. Finally the memorandum in opposition to summary judgment fails to "set forth specific facts showing that there is a genuine issue for trial," as required by Civ. R. 56(E), concerning how the improper-billing argument was the proximate cause of any damages related to the Maybury lawsuit or its settlement.[5]

{¶ 26} We turn now to Wayside's remaining argument, which involves whether the record reveals any damages proximately caused by Slaton's alleged malpractice. Resolution of this issue requires analysis of the motion for summary judgment and Wayside's response thereto. In addressing the issue, we find it appropriate to treat the assorted causes of action in Wayside's complaint as claims for legal malpractice. This court has recognized that "'[a]n action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice * * *, regardless of whether

---

[5] Wayside does make many references in its memorandum to billing for negligent work, and billing for correction of that work, as part of its argument for punitive damages. But it fails to establish proximate cause of the argued billing discrepancy to the litigation initiated by Maybury.

predicated upon contract or tort or whether for indemnification or for direct damages. * * * Malpractice by any other name still constitutes malpractice.'"*Pierson v. Rion*, 2d Dist. Montgomery No. 23498, 2010-Ohio-1793, ¶14, quoting *Muir v. Hadler Real Estate Mgmt. Co.*, 4 Ohio App.3d 89, 446 N.E.2d 820 (10th Dist.1982). "'Such professional misconduct may consist either of negligence or of breach of the contract of employment. It makes no difference whether the professional misconduct is founded in tort or contract, it still constitutes malpractice.'" *Id.* We therefore consider all of Wayside's allegations as claims of malpractice.

**{¶ 27}** The focus of the motion for summary judgment was on proximate cause of damages. Slaton and Bogin Patterson argued "that Plaintiff has not suffered any damages that were proximately caused by Defendants." (Summary Judgment Motion at 1). In footnote four of its responsive memorandum, Wayside acknowledged that Slaton and Bogin Patterson "base[d] [the] motion for summary judgment exclusively on the absence of damages." As noted above, Slaton and the law firm presented the affidavit of Stephen Chappelear, a practicing lawyer and member of the Ohio Bar for more than thirty-three years. The affidavit stated that it was based on Chappelear's "review of the pleadings, filings, and discovery in this case, and certain pleadings and filings in the United States District Court * * *, as well as [his] own knowledge and expertise." (Chappelear affidavit ¶1). Chappelear continued: "It is my opinion, based upon my knowledge, experience, and expertise detailed above and review of the material provided to me, there is no causal connection between the conduct of Mr. Slaton and the damages claimed by Wayside." (*Id.* at ¶13).

**{¶ 28}** Not only did Wayside not respond with evidence countering the affidavit, it made no reference to the affidavit at all. Wayside made no effort to point out that the affidavit

might be incomplete, inadequate, or improperly submitted.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

Civ. R. 56(E).

{¶ 29} If the moving party satisfies its initial burden of supporting its motion with evidence of the type listed in Civ.R. 56, the non-moving party then has the reciprocal burden to set forth specific facts in response. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Because Wayside made no response to Chappelear's affidavit, the only relevant question is whether the affidavit satisfied the movants' initial burden to "demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Id.* We believe the affidavit was sufficient to impose a reciprocal burden on Wayside.

{¶ 30} Ohio courts generally have required expert testimony to establish an attorney's breach of the duty of care in a legal-malpractice case unless the breach is obvious or within common knowledge. *See*, *e.g.*, *Toliver v. Duwel*, 2d Dist. Montgomery No. 24768, 2012-Ohio-846, ¶53. Unlike cases involving medical malpractice, there is relatively little authority, however, requiring expert testimony to establish causation in legal-malpractice cases. *See*, *e.g.*, *Bloomberg v. Kronenberg*, U.S. Dist. Ct. No. 1:06-CV–0733, 2006 WL

3337467, *5 (N.D. Ohio 2006) ("[T]he Court rejects the Defendant's argument that Ohio law requires proximate cause be established only through expert testimony [in legal-malpractice cases.] * * * At best, * * * in some instances expert testimony regarding proximate cause may be necessary."); *Montgomery v. Gooding, Huffman, Kelly & Becker*, 163 F.Supp.2d 831, 837 (N.D.Ohio 2001) ("* * * Ohio law does not require expert witness evidence to establish proximate cause in legal malpractice actions."); *Morris v. Morris*, 9th Dist. Summit No. 21350, 2003-Ohio-3510, ¶19 ("However, it appears that an expert is not required to prove the third prong of a legal malpractice claim, or proximate cause."); *Robinson v. Calig & Handleman*, 119 Ohio App.3d 141, 144, 694 N.E.2d 557 (10th Dist. 1997) (emphasis added) (noting that "with appropriate foundation, an expert *may* opine concerning the proximate cause aspect of a legal malpractice case"); *Compare Yates v. Brown*, 185 Ohio App.3d 742, 2010-Ohio-35, 925 N.E.2d 669,  ¶24 (9th Dist.) (finding expert testimony necessary "[w]hen multiple attorneys were involved in the underlying representation, and when the plaintiffs have alleged negligent representation by more than one attorney" and reasoning that "expert testimony would be critical under these circumstances to determining causation and either parsing or eliminating liability"). Having reviewed the case law, we find no general requirement for expert testimony on the issue of causation in legal-malpractice cases. Nonetheless, such testimony may be necessary under some circumstances.[6] *Bloomberg*.

---

[6]In a notice of additional authorities filed on January 23, 2012, Slaton and Bogin Patterson cite this court's opinion in *Nalls v. Nystrom*, 2d Dist. Montgomery No. 21232, 2006-Ohio-3515, for the proposition that a legal-malpractice plaintiff must present expert testimony on the issue of proximate cause. We disagree with the appellees' reading of *Nalls*. In *Nalls*, this court upheld the trial court's entry of a directed verdict in favor of the defendant attorney on the basis that he did not breach his duty to the plaintiff. *Id.* at ¶16-19. After so doing, this court added a citation to an earlier decision in which it had observed that expert testimony on causation and damages "'would be at least helpful to the jury, if not necessary to their resolution of these issues.'" *Id.* at ¶20, quoting *Nalls v. Nystrom*, 159 Ohio App.3d 200, 2004-Ohio-6230, 823 N.E.2d 500, 505, ¶29, fn.1 (2d Dist.); *see, also, Nalls v. Nystrom*, Montgomery C.P. No. 02-2239 (June 21, 2005)

**{¶ 31}** On appeal, Wayside challenges the affidavit of Stephen Chappelear by arguing that it is inadequate because the attorney's opinion is based on the erroneous assumption that the federal litigation had preclusive effect. That argument is reasonable, but both incomplete and too late. A contrary view of the affidavit is that although it supports its analysis with the federal court resolution (i.e., that Slaton did not violate the EPPA by terminating Maybury), one reason for the federal decision was a factual finding that Slaton did not terminate Maybury at all. As the trial court found below, the termination was done by Mark Campbell—a factual conclusion with which we agree. Therefore, the affidavit's logic,   that Slaton and the law firm cannot be liable for damages for settling and defending a  lawsuit grounded on wrongful termination, because Slaton did not fire Maybury, can be viewed as intact. We will not permit Wayside to parse the language of the affidavit for the first time on appeal when there was no mention of it in the trial court, no apparent attempt to  depose the affiant, no attempt to challenge or oppose the opinion, and no attempt to respond in kind. Moreover, the last paragraph, which we quoted above, clearly expresses the opinion that Slaton's actions did not proximately cause the damages Wayside seeks. In sum, we believe the affidavit was sufficient to impose upon Wayside a reciprocal duty to respond to it, and Wayside failed to do so. Accordingly, the grant of summary judgment to the appellees was correct.

---

(Froelich, J.) ("Mr. Nystrom argues that Mr. Nalls does not have an expert on the proximate cause issue and cites a footnote from the Court of Appeals decision that expert testimony on the issues of damages and proximate cause could be 'helpful' to the jury. * * * Although it might be helpful, expert witness evidence is not required to establish proximate cause in legal malpractice cases.").   We do not dispute that expert testimony may be "helpful" to a jury although not required in all cases. Slaton and Bogin Patterson also cite *Nu-Trend Homes, Inc. v. Law Offices of Delibera, Lyons & Bibbo*, 10th Dist. Franklin No. 01AP1137, 2003-Ohio-1633. In *Bloomberg*, the federal district court addressed *Nu-Trend*, finding it stands only "for the proposition that in some instances expert testimony regarding proximate cause may be necessary."

{¶ 32} We recognize Wayside's argument that the trial court's finding Maybury was not terminated in violation of the EPPA should not be dispositive of the entire case. Wayside alleged it faced liability to Maybury on the claims he asserted in the federal lawsuit due to Slaton's deficient performance as its attorney. As noted above, the federal district court found a genuine issue of material fact as to whether Slaton (and implicitly Wayside) had violated the EPPA by (1) asking Maybury to submit to a polygraph and (2) by threatening Maybury with discipline or discharge if he refused.[7] (Doc. #41 at Exh. A p. 6-7). However, when Maybury's termination, and its potential for damages, is excluded from the mix, whether the federal lawsuit would have been initiated, resulting in damages, is a matter not within common knowledge which, in our view, requires expertise to establish that any resulting damage was proximately caused by the actions of Slaton or the firm. In that regard, Wayside's failure to respond to the motion for summary judgment with an opinion from its own expert is dispositive—Wayside has failed to demonstrate a genuine issue of material fact as to whether any damages were proximately caused by the appellees' actions.

{¶ 33} Having reviewed the record, we believe the trial court did not err in finding that Wayside cannot establish any damages proximately caused by legal malpractice, as a matter of law, because Slaton did not terminate Maybury in violation of the EPPA. The two possible EPPA violations that the trial court did not address are insufficient, by themselves, for us to conclude, as a matter of common knowledge, that they would have generated a

---

[7]Although the federal district court's finding of a genuine issue of material fact is not entitled to preclusive effect, the evidence before us supports the same conclusion. Except in certain circumstances, the EPPA (1) prohibits an employer from directly or indirectly asking an employee to take a polygraph test, 29 U.S.C. 2002(1), and (2) prohibits an employer from threatening to discipline or discharge an employee who refuses or fails to take a polygraph test, 29 U.S.C. §2002(3)(A). In his capacity as Wayside's legal counsel, Slaton admittedly asked Maybury to take a polygraph test and provided Maybury with a written policy that subjected employees to discipline including termination for refusing a polygraph test. (Slaton depo. at 40).

lawsuit, requiring its defense and settlement, without expert testimony on proximate causation. Wayside did not satisfy its reciprocal burden to provide such expert testimony. Therefore, the trial court did not err in entering summary judgment in favor of Slaton and Bogin Patterson. The second assignment of error is overruled.

{¶ 34} In a cross assignment of error brought under App.R. 3(C)(2),[8] Slaton and Bogin Patterson seek to defend the trial court's summary judgment ruling on grounds not relied on by the trial court below. Having determined above that the trial court properly entered summary judgment in favor of Slaton and Bogin Patterson, we overrule their cross assignment of error as moot.

{¶ 35} Based on the reasoning set forth above, the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

John J. Mueller
Robert H. Stoffers
David K. Frank
Jason R. Deschler
Hon. William H. Wolff, Jr.
(Sitting by assignment for Hon. Connie S. Price)
Hon. Michael W. Krumholtz

---

[8] App.R. 3(C)(2) provides: "A person who intends to defend a judgment * * * on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal."